STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1517


ARLENE SQUYRES, INDIVIDUALLY,
AND ON BEHALF OF THE ESTATE OF
 JOSEPH SQUYRES

VERSUS

OUR LADY OF LOURDES REGIONAL
MEDICAL CENTER, INC., ET AL.


************


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2004-5872-K
HONORABLE PATRICK L. MICHOT,
DISTRICT COURT JUDGE


************


JAMES T. GENOVESE
JUDGE


************


Court composed of Jimmie C. Peters, Billy H. Ezell, and James T. Genovese, Judges.



AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.



Kenneth W. DeJean
Law Offices of Kenneth W. DeJean
417 West University Avenue
Post Office Box 4325
Lafayette, Louisiana 70502
(337) 235-5294
COUNSEL FOR PLAINTIFFS/APPELLANTS:
      Arlene Squyres, Individually, and on behalf of
      the Estate of Joseph Squyres

Terry Rowe
Rowe & Middleton
109 Stewart Street
Post Office Box 3323
Lafayette, Louisiana 70502
(337) 232-4744
COUNSEL FOR DEFENDANT/APPELLEE:
    Karen Kemzuro

Patrick Manning Wartelle
Roy, Bivens, Judice, Roberts & Wartelle
600 Jefferson Street, Suite 800
Post Office Drawer Z
Lafayette, Louisiana 70502
(337) 233-7430
COUNSEL FOR DEFENDANTS/APPELLEES:
    Our Lady of Lourdes Regional Medical Center, Inc.,
    Monique Joseph, and Catherine Vaughtsteinmann

**GENOVESE, JUDGE.**

In this medical malpractice case, Plaintiffs appeal the trial court judgment granting a motion for summary judgment on behalf of Defendant, Karen Kemzuro. For the following reasons, we affirm in part, reverse in part, and remand.

## FACTS

On January 9, 2003, Joseph Squyres (Mr. Squyres) was admitted to Our Lady of Lourdes Regional Medical Center, Inc. (Lourdes) in Lafayette, Louisiana, for a left knee replacement to be performed by Dr. Thomas Montgomery. Following surgery, on the evening of January 12, 2003, Mr. Squyres complained of pain. The physician on call, Dr. Barry Henry (Dr. Henry), ordered Ambien to help him rest and Percocet to relieve the pain. In accordance with the doctor's orders, certain nurses at Lourdes administered the Percocet at 7:30 p.m. and the Ambien at 8:30 p.m. That same night, due to continued complaints of pain, Dr. Henry also ordered Dilaudid, which was administered to Mr. Squyres at approximately 11:00 p.m. In the early morning of January 13, 2003, at 12:30 a.m., Mr. Squyres went into respiratory arrest. He was administered cardiopulmonary resuscitation (CPR), placed on a ventilator, and moved to the intensive care unit. Mr. Squyres died on February 4, 2004.

On July 14, 2003, Arlene Squyres, individually, and on behalf of the Estate of Joseph Squyres, filed a Petition for a Medical Review Panel. The medical review panel rendered a decision on October 5, 2004, wherein the panel concluded that there was no breach of the standard of care by Dr. Henry, Lourdes, or its employees.

On November 30, 2004, Arlene Squyres, individually, and on behalf of the Estate of Joseph Squyres, filed suit against Defendants: Lourdes; Dr. Henry; nurse Karen Kemzuro (Ms. Kemzuro); nurse Monique Joseph (Ms. Joseph); and nurse

1

Catherine Vaughtsteinmann (Ms. Vaughtsteinmann). Plaintiffs' claims against Dr. Henry were dismissed by the trial court pursuant to summary judgment granted in favor of Dr. Henry on April 18, 2005. A motion for summary judgment was also filed on behalf of Lourdes, Ms. Joseph, and Ms. Vaughtsteinmann, which was granted by the trial court on November 28, 2005. However, in *Arlene Squyres v. Our Lady of Lourdes Reg'l Med. Ctr., Inc. et al.,* an unpublished opinion bearing docket number 06-744 (La.App. 3 Cir. 12/6/06), this court reversed the trial court's grant of summary judgment in favor of Lourdes, Ms. Joseph, and Ms. Vaughtsteinmann and remanded the matter for further proceedings. Ms. Kemzuro subsequently filed a motion for summary judgment on July 21, 2005, which was also granted by the trial court. A judgment was signed in accordance therewith on March 3, 2006. It is from this judgment granting summary judgment in favor of Defendant Ms. Kemzuro that Plaintiffs appeal.

## ISSUES

The issues raised by Plaintiffs for our review are summarized as follows:

1.   whether the trial court erred in finding that a nurse was not qualified to testify as to the standard of care of nurses and could not testify as to whether a violation of that standard of care caused or contributed to the death of Joseph Squyres;

2.   whether the trial court erred in finding that there was no genuine issue of material fact as to the cause of death of Joseph Squyres; and

3.   whether the trial court erred in finding that there was informed consent for the risks associated with the medication and administering of the medication to Joseph Squyres.

<h1 style="text-align:center"><u>LAW AND DISCUSSION</u></h1>

**Standard of Review**

> Appellate courts review grants of summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Ocean Energy, Inc. v. Plaquemines Parish Gov't*, 04-0066 (La. 7/6/04), 880 So.2d 1. The movant bears the burden of proof. La. C.C.P. art. 966(C)(2). If the movant meets this initial burden, the burden then shifts to plaintiff to present factual support adequate to establish that he will be able to satisfy the evidentiary burden at trial. *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So.2d 131, 137. Thereafter, if plaintiff fails to meet this burden, there is no genuine issue of material fact and defendant is entitled to summary judgment as a matter of law. *Id*. This court has recognized that a "genuine issue" is a "triable issue," an issue in which reasonable persons could disagree. *Jones v. Estate of Santiago*, 03-1424 (La. 4/14/04), 870 So.2d 1002, 1006 (citing *Smith v. Our Lady of the Lake Hosp.*, 93-2512 (La. 7/5/94), 639 So.2d 730, 751). Further, this court has defined a "material fact" to be one in which "its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery." *Id*.

*Champagne v. Ward*, 03-3211, pp. 4-5 (La.App. 3 Cir. 1/19/05), 893 So.2d 773, 776-77.

**Burden of Proof**

In a medical malpractice action, La.R.S. 9:2794(A) provides that the plaintiff shall have the burden of proving:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.

> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

3

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

"Thus, according to La.R.S. 9:2794(A), any medical malpractice claimant must establish, by a preponderance of the evidence: (1) the defendant's standard of care; (2) the defendant's breach of that standard of care; and (3) a causal connection between the breach and the claimant's injuries." *Browning v. West Calcasieu Cameron Hosp.*, 03-332, p. 10 (La.App. 3 Cir. 11/12/03), 865 So.2d 795, 804, *writ denied,* 03-3354 (La. 2/13/04), 867 So.2d 691 (citing *Pfiffner v. Correa*, 94-924, 94-963, 94-992 (La. 10/17/94), 643 So.2d 1128).

**Standard of Care and Causation**

In opposition to the motion for summary judgment, Plaintiffs introduced the affidavit of Laura Frost Oettell (Ms. Oettell), a registered nurse, who opined that Defendants, including Karen Kemzuro, failed to meet the proper standard of care and that their actions were a proximate cause of the death of Mr. Squyres. Plaintiffs assert that the trial court erred in finding that Ms. Oettell was not qualified to testify as to the standard of care of nurses. We have reviewed the record of these proceedings, including the reasons provided by the trial court, and find this assertion to be without merit.

When ruling on the present motion for summary judgment, which was submitted to the trial court on the briefs of the parties, the trial court stated that "the court finds that there is no genuine issue of material fact and for the reasons stated in the previous ruling on the motion - - previous motion for summary judgment as well as these reasons, the court will grant the motion for summary judgment." In the oral reasons of July 5, 2005, to which the trial court referred, the trial court did not state

4

that Ms. Oettell was not qualified to testify as to the appropriate standard of care. Rather, the trial court stated that Ms. Oettell, a registered nurse, was not qualified to give an opinion as to the cause of Mr. Squyres's death. As stated in our previous unpublished opinion, which involved the same affidavit of Ms. Oettell, a plaintiff may use the expert testimony of a nurse to establish the requisite standard of care. *Arlene Squyres v. Our Lady of Lourdes Reg'l Med. Ctr., Inc. et al.,* an unpublished opinion bearing docket number 06-744 (La.App. 3 Cir. 12/6/06) (citing *Coleman v. Christian Home Health Care*, 99-2948 (La.App. 4 Cir. 4/11/01), 786 So.2d 819; *Cagnolatti v. Hightower*, 95-2598, 95-2599 (La.App. 4 Cir. 12/11/96), 692 So.2d 1104). Thus, we find from the record that the trial court correctly determined that Ms. Oettell, a registered nurse, was competent to testify on the issue of the applicable standard of care of nurses.

Plaintiffs also assert that the trial court erred in concluding that Ms. Oetell could not testify as to whether a violation of the standard of care caused or contributed to the death of Mr. Squyres. This argument was also asserted in Plaintiffs' prior appeal of the granting of summary judgment in favor of Lourdes, Ms. Joseph, and Ms. Vaughtsteinmann. As we previously opined, "for the purpose of summary judgment, expert testimony is not required to prove that a patient's death is causally connected to the defendant's conduct." *Id*. (citing *Browning,* 865 So.2d 795). Therefore, we find that the trial court erred in holding that Ms. Kemzuro was entitled to summary judgment on the grounds that Plaintiffs failed in their burden of proving causation.

**Genuine Issues of Material Fact**

Another issue raised by Plaintiffs in the present appeal is whether the trial court

5

erred in finding that there was no genuine issue of material fact as to the cause of death of Mr. Squyres. We find, based on our review of the record of these proceedings, that there remain questions of fact as to what caused the death of Mr. Squyres.

In support of the motion for summary judgment, Ms. Kemzuro introduced the Opinion and the Reasons for Opinion of the medical review panel. Relevant to the present motion for summary judgment is the panel's conclusion that "[t]he evidence does not support the conclusion that the defendant, **Karen Kemzuro, L.P.N**[.] failed to meet with the appropriate standard of care as charged in the complaint." Additionally, on the issue of causation, the medical review panel concluded that "[t]he conduct complained of was not a factor of any resultant damages to plaintiff."

In opposition to the motion for summary judgment on behalf of Ms. Kemzuro, Plaintiffs introduced the affidavit of Ms. Oettell, and the deposition testimony of Dr. Albert R. Corne, Jr. (Dr. Corne), an internist. Ms. Oettell stated in her affidavit that "[i]t is impossible for one to assume that the medication was administered correctly based on the lack of patient monitoring and documentation including the unfortunate event and outcome of Joseph Squyres following the administration of a potent opiate narcotic." On the issue of causation, Ms. Oettell opined that "the breaches of the applicable standards of nursing care stated within [her] affidavit contributed to respiratory depression of Joseph Squyres and ultimately his death." Dr. Corne, who had seen Mr. Squyres post-operatively as the physician on call on January 13, 2003, testified that Mr. Squyres "got enough medicine to produce respiratory arrest and a vegetative state." Dr. Corne agreed with Ms. Oettell that the cause of death was the "volume of medication" and the resulting "snowball effect."

6

Considering the expert opinions of Ms. Oettell and Dr. Corne and their conflict with the expert opinions of the members of the medical review panel pertaining to the cause of death of Mr. Squyres, we find that genuine issues of material fact remain as to whether or not the actions or inactions of Ms. Kemzuro breached the applicable standard of care and whether her actions or inactions caused or contributed to his death. These unresolved genuine issues of material fact preclude the granting of summary judgment. Therefore, we find that the trial court erred in holding that Ms. Kemzuro was entitled to summary judgment because there was no genuine issue as to any material fact that the cause of Mr. Squyres' death was not caused by or contributed to by any act, omission, or breach of standard of care by Ms. Kemzuro.

**Informed Consent**

Plaintiffs, on appeal, also raise the issue of a lack of informed consent by Mr. Squyres for the risks associated with the medication and its administration. However, we find this assertion to be misplaced. The duty to obtain informed consent is found at La.R.S. 40:1299.40(E)(7)(c), which provides that in order to be covered by the statutory provisions relative to informed consent, "the physician or other health care provider who will actually perform the contemplated medical or surgical procedure" must make the requisite disclosures. Thus, by the express terms of the statute, the duty of obtaining the informed consent of a patient is owed only by the physician or health care provider who will *actually be performing* the procedure. Because Plaintiffs bear this burden of proof at trial, it was their burden to show that Ms. Kemzuro performed a procedure which required that she obtain the informed consent of Mr. Squyres. There is nothing in the record establishing the fact that Ms. Kemzuro performed the procedure which is the subject matter of this litigation. We find that

Plaintiffs failed to meet this burden. Therefore, there is no genuine issue of material fact, and Ms. Kemzuro is entitled to summary judgment as a matter of law on the issue of informed consent. Accordingly, we affirm the trial court's grant of summary judgment in favor of Ms. Kemzuro dismissing the claims of Plaintiffs against Ms. Kemzuro solely related to her alleged failure to obtain the informed consent of Mr. Squyres for the risks associated with the medication and administration of the medication to him.

## DECREE

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Karen Kemzuro dismissing the claims of Arlene Squyres, individually, and on behalf of the Estate of Joseph Squyres, against Karen Kemzuro only as to her failure to obtain the informed consent of Joseph Squyres. In all other respects, the judgment of the trial court granting summary judgment in favor of Karen Kemzuro is reversed, and this matter is remanded for further proceedings consistent herewith.

Costs of this appeal are assessed against Defendant, Karen Kemzuro.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

8